FARMINGTON PLUMBING & HEATING COMPANY, et al., Plaintiffs,

v.

FISCHER SAND AND AGGREGATE, INC., Appellant,

Wenzel Plumbing and Heating, Inc., and Hilite Electric Company, Respondents,

Peoples Natural Gas Company, Defendant.

No. 47835.

Supreme Court of Minnesota.

March 30, 1979.

Rehearing Denied July 13, 1979.

---

Maun, Hazel, Green, Hayes, Simon & Aretz and M. C. Green, St. Paul, for Fischer Sand & Aggregate, Inc.

Mahoney, Dougherty & Mahoney, Kenneth P. Gleason and Richard P. Mahoney, Minneapolis, for respondents.

Heard before TODD, SCOTT and WAHL, JJ., and considered and decided by the court en banc.

WAHL, Justice.

Fischer Sand and Aggregate, Inc. (Fischer) appeals a judgment of the Dakota County District Court in an action brought by plaintiffs against Fischer, the City of Farmington, Peoples Natural Gas Company and Wenzel Plumbing and Heating/Hilite Electric Company (Hilite) for damages caused by a gas explosion on July 24, 1974.[1] The jury found that all four defendants were negligent but that only the negligence of Fischer and Hilite was a direct and proximate cause of plaintiffs' damages. The jury apportioned 25 percent of the liability to Fischer, 75 percent to Hilite. Fischer challenges the apportionment of negligence and the trial court's refusal to relieve it of its liability. We affirm.

In May 1974, the City of Farmington contracted with Fischer, the general contractor, to convert an alley in downtown Farmington into a pedestrian walkway. Fischer subcontracted with Hilite to place underground electric lines in the alley.

Approximately 10 days before the explosion Fischer began to do preliminary grading on the alley. At this point two gas company employees approached the Fischer employee who was grading to ensure that all the gas lines in the alley had been properly located. The gas company employee located the gas lines, marked the approximate locations on the ground with paint, and dug down to expose the gas lines estimated to be some 24 inches below the alley surface. The Fischer employee then proceeded to grade 2 to 8 inches of earth off the top of the alley and ran the grader blade over the holes which exposed the gas lines, covering them from view and obscuring the paint marks, without disturbing the gas lines. No Fischer employee informed any Hilite supervisor or employee of the location of the gas lines or that several inches of earth had been removed.

On July 24, Hilite dug a trench through the alley. In the process the backhoe operator snagged and bent a rusty pipe. Prior to this date both the operator and his foreman had inspected the site. At that time they met an unidentified gas company employee[2] who showed them the location of two gas lines, neither of which was in the area where the pipe was snagged, and informed them that the lines were 30 inches below the surface. Because Hilite had to bury the line only 24 to 28 inches below the surface, and because they had not been informed that 2 to 8 inches had been graded off the alley, the backhoe operator and his foreman concluded, after inspecting the snagged pipe, that it was too close to the surface and too rusty to be a gas line. They finished digging the trench, laid the electric line, and filled in the trench covering the snagged pipe. They informed no one of the snagged pipe until after the explosion which occurred 4 to 9 hours later.

Investigation of the explosion revealed a leak in the elbow connecting the snagged pipe to a building on the north side of the alley. The leaking gas seeped upward into the building where it eventually was ignited by a pilot light, causing the explosion and fire which damaged plaintiffs' property.

The issues on appeal are: (1) whether the evidence is sufficient to support the verdict that Fischer was 25 percent negligent and that such negligence was a proximate cause of plaintiffs' injuries; (2) whether Fischer is entitled to indemnity from Hilite; (3)

---

1. The plaintiffs in this case have been compensated for the damages caused by the explosion, and their claims are not involved in this appeal.

2. This gas company employee was not identified at trial and does not appear to be one of the employees who located the gas lines for the Fischer employee.

whether Hilite is liable for Fischer's attorneys fees; and (4) whether Hilite breached the subcontract by failing to obtain the requisite amount of insurance.

■ 1. We determine first the sufficiency of the evidence to support the findings that Fischer was 25 percent negligent and that such negligence was a proximate cause of plaintiffs' damage. In examining a jury verdict on appeal the evidence must be considered in the light most favorable to the prevailing party, and the verdict must be sustained if it is possible to do so on any reasonable theory of the evidence. The verdict will not be disturbed unless it is manifestly and palpably contrary to the evidence. *Carpenter v. Mattison,* 300 Minn. 273, 276, 219 N.W.2d 625, 628 (1974). Based on the evidence in this case the jury could have concluded that Fischer was negligent in failing to inform Hilite of the location of the gas lines and that its employees had graded 2 to 8 inches off the surface of the alley. The verdict is consistent with this view of the evidence.

■ Fischer argues further that Hilite's negligence constitutes a superseding cause which relieves it of liability. To be a superseding cause, intervening negligence must in no way be caused by another party's negligence. *Bonhiver v. Graff,* 311 Minn. 111, 118, 248 N.W.2d 291, 297 (1976). The jury could have concluded that the failure to report the damaged pipe was due in part to Fischer's failure to inform Hilite of the location of the gas lines and the grading of the alley. Given this, Hilite's negligence cannot be considered a superseding cause.

■ 2.—3. We must next determine whether Fischer is entitled to indemnity either because its negligence was wholly "vicarious and secondary," in contrast to Hilite's negligence, which was "active and primary," or because the subcontract provides for such indemnity. We rejected the active/passive analysis for indemnity cases in *Tolbert v. Gerber Industries, Inc.,* 255 N.W.2d 362 (Minn.1977). In *Tolbert* we held that tortfeasors must accept responsibility for damages commensurate with their own relative culpability and limited allocation of loss in such cases to contribution. There is no claim for contribution in this case. Each party must pay its own proportionate share of plaintiffs' damages. Because Fischer does not come within any of the other categories of indemnity[3] outlined in *Hendrickson v. Minnesota Power & Light Co.,* 258 Minn. 368, 104 N.W.2d 843 (1960), the only way Fischer can be indemnified in this case is if the subcontract so provides.

■ The subcontract and the contract must be read together to determine if Fischer is entitled to indemnity in this case because the subcontract incorporated certain provisions of the prime contract. The prime contract provided:

"11704 The Contractor shall continuously maintain adequate protection of all the work from damage and shall protect the Owner's and adjacent property from injury or loss arising in connection with this Contract. He shall make good any such damage or loss, except as may be caused by the agent or employee of the Owner. . . .

**3.** In *Hendrickson v. Minnesota Power & Light Co.,* 258 Minn. 368, 104 N.W.2d 843 (1960), we held that a joint tortfeasor could recover indemnity only:

"(1) Where the one seeking indemnity has only a derivative or vicarious liability for damage caused by the one sought to be charged.

(2) Where the one seeking indemnity has incurred liability by action at the direction, in the interest of, and in reliance upon the one sought to be charged.

(3) Where the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged.

(4) Where the one seeking indemnity has incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged.

(5) Where there is an express contract between the parties containing an explicit undertaking to reimburse for liability of the character involved." 258 Minn. 372, 104 N.W.2d 848.

In *Tolbert v. Gerber Industries, Inc.,* 255 N.W.2d 362 (Minn.1977), we overruled the fourth category and held that where the negligence of more than one party is a direct cause of the injury, each party must pay its own share of the damages in proportion to its relative culpability.

"11706 Indemnity: The Contractor shall indemnify the Owner, . . . from all suits, actions, or claims of any character brought because of any injuries or damages received or sustained by any person, persons or property, on account of the operations of said Contractor, or on account of or in consequence of his neglect in safeguarding the work; . . . or because of any act or omission, neglect or misconduct of said Contractor; . . ."

The subcontract provided:

"THE SUB–CONTRACTOR AGREES AS FOLLOWS:

1. To be bound to the Contractor by terms of the General Contract, to conform to and comply with all of the terms of the General Contract and to assume toward the Contractor all the duties and obligations that the Contractor assumes in the General Contract toward the Owner insofar as they are applicable to this Sub-Contract unless changed in this Sub-Contract. . . .

"IV. To obtain, effect, maintain and pay for . . . public liability insurance protecting the Sub-Contractor against claims for bodily injury, death or damage to property and for such other risks as are specified below occurring upon, or in connection with, the execution of work covered under this Sub-Contract. Such insurance shall indemnify the Contractor, Owner, Engineer and other subcontractors from all accidents or occurrences arising out of the Sub-Contractor's operation . . . .

"VI. To protect his work of construction adequately and properly by lights, barriers, supports, signs and guards so as to avoid injury or damage to persons or property and to be directly responsible for damages to persons and property occasioned by failure to do so, *or by any negligence of the Sub-Contractor* or any

of his officers, agents or employees in the performance of his work. . . ." (Emphasis added.)

Indemnity agreements are to be strictly construed when the indemnitee (in this case, Fischer) seeks to be indemnified for its own negligence. There must be an express provision in the contract to indemnify the indemnitee for liability occasioned by its own negligence; such an obligation will not be found by implication. *Webster v. Klug & Smith,* 81 Wisc.2d 334, 340, 260 N.W.2d 686, 690 (1978). This is consistent with the policy expressed in *Tolbert v. Gerber Industries, Inc., supra,* that each tortfeasor accept responsibility for damages commensurate with its own relative culpability.

■ Neither the prime contract nor the subcontract provides for Fischer to be indemnified for its own negligence, although they do permit Fischer to be indemnified if it were held liable for Hilite's negligence. Without an express provision in the contracts, Fischer cannot be indemnified for its own negligence.[4]

■ 4. Fischer also claims that Hilite is liable for the expenses it incurred in defending this negligence action. *Northern Welding Co. v. Jordan,* 150 Minn. 12, 184 N.W. 39 (1921), holds that an indemnitee may recover attorneys fees where the action is found to be within the hold harmless provision of the contract. In the instant case Hilite was not contractually obligated to indemnify Fischer for Fischer's own negligence; thus, its refusal to accept the tendered defense does not render it liable for attorneys fees.

■ 5. Finally, Fischer maintains that Hilite breached the contract because it failed to carry the amount of insurance provided for in the contract. Hilite admits to carrying only $100,000 in insurance instead of the $500,000 required by the contract. Assuming that this is a breach of

4. To the extent that prior cases, such as *Anstine v. Lake Darling Ranch,* 305 Minn. 243, 233 N.W.2d 723 (1975); *Jacobson v. Rauenhorst Corp.,* 301 Minn. 202, 221 N.W.2d 703 (1974); and *Christy v. Menasha Corp.,* 297 Minn. 334, 211 N.W.2d 773 (1973), rejected the

strict construction rule for indemnity agreements, they are inconsistent with the policies expressed in *Tolbert v. Gerber Industries, Inc., supra,* and *Hendricksen v. Minnesota Power and Light Co., supra,* and are hereby overruled.

contract, Fischer cannot recover for this breach because the required insurance would not have insured Fischer for losses arising out of Fischer's own negligence.

Affirmed.