Paul F. SARGENT, Appellee,

v.

Roger T. JOHNSON, Architect, Appellant.

AXEL H. OHMAN, INC., a Minnesota Corporation, Appellee,

v.

PRESTON HAGLIN COMPANY, a Minnesota Corporation, Appellee,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Appellee.

Paul F. SARGENT, Cross-Appellee,

v.

Roger T. JOHNSON, Architect, Cross-Appellee.

AXEL H. OHMAN, INC., a Minnesota Corporation, Cross-Appellee,

v.

PRESTON HAGLIN COMPANY, a Minnesota Corporation, Cross-Appellee,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Liberty Mutual Insurance Company, in its Individual capacity and in its defense of Preston Haglin Company, Cross-Appellants.

Nos. 79–1078, 79–1121.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1979.

Decided July 13, 1979.

Mary Jeanne Coyne of Meahger, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, Minn. (argued), and O. C. Adamson II, Minneapolis, Minn., on brief, for Roger T. Johnson.

John R. DeLambert of VanEps & Gilmore, Minneapolis, Minn. (argued), and Lynn G. Truesdell, III, Minneapolis, Minn., Richards, Montgomery, Cobb & Bassford, Minneapolis, Minn., on brief, for Liberty Mutual Ins. Co.

David F. Fitzgerald of Rider, Bennett, Egan & Arundel, Minneapolis, Minn. (argued), William T. Egan and Lewis A. Remele, Jr., Minneapolis, Minn., on brief, for Axel H. Ohman, Inc. and others.

Robert G. Share and James E. Nelson, Minneapolis, Minn., on brief, for Preston Haglin Co.

Clint Grose and David A. Stofferahn of Grose, Von Holtum, Von Holtum, Sieben & Schmidt, Minneapolis, Minn., for Paul F. Sargent.

Before HEANEY, BRIGHT and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

This matter is before us for the third time.[1] The sole issue raised on this appeal is whether, under a contractual indemnity clause, a negligent indemnitee can recover attorney's fees from his indemnitor. The District Court denied recovery. We affirm.

Paul F. Sargent was employed on a construction project in Minneapolis, Minnesota, on July 14, 1969. On that date, he fell down an elevator shaft and was severely injured. He subsequently brought an action in the District Court alleging negligence on the part of Axel H. Ohman, Inc. (Ohman), a subcontractor on the project, and Roger T. Johnson, architect on the project. These defendants joined Preston Haglin Company (Haglin), the general contractor, as a third-party defendant.[2] At trial, the court directed a verdict against Johnson, Ohman and Haglin and referred the remaining issues to the jury. It returned a special verdict of $1.6 million in favor of Sargent and apportioned fault as follows:

Ohman—55 percent;

Johnson—15 percent;

Haglin—30 percent.

After judgment was entered according to this special verdict, all of the parties filed post-trial motions. Before the District Court ruled on these motions, Sargent, Ohman and Haglin entered into a settlement agreement under which Ohman and Haglin agreed to pay the full amount of the judgment, with Ohman paying 55 percent and Haglin, 45 percent. Johnson, who was not a party to the agreement, was relieved of any liability to Sargent. On November 14, 1974, the District Court modified its earlier judgment to reflect this settlement agreement. Thereafter, Johnson renewed that part of his post-trial motion which sought an award of his attorney's fees from Haglin and Ohman.[3]

---

1. See *Sargent v. Johnson*, 551 F.2d 221 (8th Cir. 1977); and *Sargent v. Johnson*, 521 F.2d 1260 (8th Cir. 1975).

2. Haglin then filed a fourth-party suit against its insurer, Liberty Mutual Insurance Company, which was tried separately.

3. Liberty Mutual Insurance Company, Haglin's insurer, has taken the position that Johnson's claim for indemnity is invalid. However, it has protected itself by moving that, should the court grant Johnson's claim, it also grant Liberty Mutual its attorney's fees and costs of litigation from Ohman under the same contractual

Johnson rests his claim for indemnification from Haglin on the indemnity provisions of the contract between the Housing and Redevelopment Authority (Johnson's employer and the owner of the building site) and Haglin.[4] Section 21.1 of the supplemental conditions to that contract reads as follows:

> The Contractors shall defend, indemnify and hold harmless the Local Authority, its Architects, Engineers and all its officers, commissioners, employees and agents from any and all claims, suits, lawsuits, damages or expenses on account of bodily injury, sickness, disease, death and property damage as a result of or alleged to be the result of the Contractors' operation in connection with this Contract.

By virtue of the pledge to "defend * * * [the Local Authority's] Architects * * * from any and all claims, suits, lawsuits, damages and expenses * * * ", Johnson contends that Haglin (and through him, Ohman) is liable for the attorney's fees Johnson incurred in defense of Sargent's negligence action. The validity of this contention turns on the interpretation of the contract and, as jurisdiction in this case rests on diversity of citizenship, Minnesota law governs. After the submission of briefs and oral argument on the issue, the District Court, without discussion, applied Minnesota law to deny Johnson's motion. It is from this denial that Johnson appeals.

After the District Court's denial of Johnson's motion and before this appeal was heard, the Minnesota Supreme Court decided *Farmington Plumbing and Heating Company v. Fisher Sand and Aggregate, Inc.,* Minn., 281 N.W.2d 838 (1979).[5] There, in denying a partially negligent indemnitee's claims against a partially negligent indemnitor, the Court stated:

> Indemnity agreements are to be strictly construed when the indemnitee * * * seeks to be indemnified for its own negligence. There must be an express provision in the contract to indemnify the indemnitee for liability occasioned by its own negligence; such an obligation will not be found by implication. *Webster v. Klug & Smith*, 81 Wis.2d 334, 340, 260 N.W.2d 686, 690 (1978).

*Id.* at 842.

Under this standard, Johnson's claim for indemnity fails as the contract between Haglin and Johnson's employer is devoid of any express provision which would indemnify Johnson for damages and expenses arising from his own negligence.

On appeal, however, Johnson argues that *Farmington Plumbing* is not controlling because the contract upon which he relies is different than that construed in the *Farmington Plumbing* case. Although the contractual provisions in the instant case are indeed broader than those construed by the Minnesota Supreme Court in *Farmington Plumbing*,[6] the rule there announced does

---

language upon which Johnson relies. *See* n.4, *infra.* As we find Johnson's motion to have been properly denied, we likewise affirm the denial of Liberty Mutual's motion.

4. Johnson's claim against Ohman is based on the following language in the contract between Ohman and Haglin: ·

> It is specifically agreed that the subcontractor accepts and assumes all responsibilities and obligations of the contractor for the above work. Subcontractor agrees to defend, indemnify, and save contractor harmless for any occurrence causing injury, death, and/or property damage arising out of subcontractor's performance of this work.

5. Petition for rehearing pending.

6. The contracts in *Farmington Plumbing and Heating Company v. Fisher Sand and Aggre-*

gate, *Inc.,* Minn., 281 N.W.2d 838 (1979), were drawn more narrowly as regards indemnification for liability not causally related to the acts of the indemnitor. The prime contract in *Farmington Plumbing* provided in part:

> "11706 Indemnity: The Contractor shall indemnify the Owner, . . . from all suits, actions, or claims of any character brought because of any injuries or damages received or sustained by any person, persons or property, on account of the operations of · said Contractor, or on account of or in consequence of his neglect in safeguarding the work; . . . or because of any act or omission, neglect or misconduct of said Contractor[.]"

not concern itself with the subtleties of determining, inferentially, the intent of the parties. Instead, it requires an express provision to effectuate the parties' intention to allow for the indemnification of a negligent indemnitee.

Nevertheless, Johnson characterizes the operative language in *Farmington Plumbing* as mere dicta which, in light of a number of other Minnesota cases, should not be taken as an authoritative statement of Minnesota law. In particular, Johnson cites to *Northern Pac. Ry. Co. v. Thorton Bros. Co.*, 206 Minn. 193, 288 N.W. 226 (1939), and the more recent cases of *Anstine v. Lake Darling Ranch*, 305 Minn. 243, 233 N.W.2d 723 (1975); *Jacobson v. Rauenhorst Corporation*, 301 Minn. 202, 221 N.W.2d 703 (1974); and *Christy v. Menasha*, 297 Minn. 334, 211 N.W.2d 773 (1973). These cases, he argues, stand for the proposition that indemnity contracts are to be fairly, not strictly, construed and that negligent indemnitees can recover from even innocent indemnitors if such is a fair construction of the intent of their contract. Johnson argues that the court in *Farmington Plumbing* couldn't have intended to overrule, *sub silentio*, this line of cases and that, thus, the reasoning of these cases is still valid law and should be applied in the instant case.

However, a reading of the more recent cases cited by Johnson reveals no factual inconsistency with the result reached in *Farmington Plumbing*. *Anstine, Jacobson* and *Christy* all involved interpretations of the indemnity clause of the standard Minnesota Associated General Contractors (AGC) subcontract agreement. In *Anstine*, the Minnesota Supreme Court noted that the probable intent of the clause was to expressly provide that a subcontractor indemnify the contractor even if the latter was himself partially negligent. *See Anstine v. Lake Darling Ranch, supra* at 305 Minn. 249–250, 233 N.W.2d at 728. Thus, the Minnesota Supreme Court, although not required to do so under the standard in use in the *Jacobson* and *Christy* cases, has acknowledged that the indemnity clauses there construed probably did include the express provision which, after *Farmington Plumbing*, is required for recovery by a negligent indemnitee.

There remains the problem of the Minnesota Supreme Court's forty-year-old ruling in *Northern Pac. Ry. Co. v. Thorton Bros. Co., supra*. There, a negligent indemnitee was allowed to recover from an innocent indemnitor on a contract of general, not express, language. To the extent that the requirement announced in *Farmington Plumbing* of an express provision for the indemnification of a negligent indemnitee runs contrary to the reasoning of the *Northern Pac. Ry. Co.* case, we must follow the more recent expression of Minnesota law. Thus, applying the *Farmington Plumbing* doctrine to the contract before us, we conclude that the District Court correctly applied Minnesota law in denying Johnson indemnification for legal fees arising out of the defense of an action alleging his own negligence.

The subcontract provided:

"THE SUB–CONTRACTOR AGREES AS FOLLOWS:

"1. To be bound to the Contractor by terms of the General Contract, to conform to and comply with all of the terms of the General Contract and to assume toward the Contractor all the duties and obligations that the Contractor assumes in the General Contract toward the Owner insofar as they are applicable to this Sub-Contract unless changed in this Sub-Contract[.]

\* \* \* \* \* \*

"IV. To obtain, effect, maintain and pay for . . . public liability insurance protecting the Sub-Contractor against claims for bodily injury, death or damage to property and for such other risks as are specified below occurring upon, or· in connection with, the execution of work covered under this Sub-Contract. Such insurance shall indemnify the Contractor, Owner, Engineer and other sub-contractors from all accidents or occurrences arising out of the Sub-Contractor's operation[.]

\* \* \* \* \* \*

"VI. To protect his work of construction adequately and properly by lights, barriers, supports, signs and guards so as to avoid injury or damage to persons or property and to be directly responsible for damages to persons and property occasioned by failure to do so, or by any negligence of the Sub-Contractor or any of his officers, agents or employees in the performance of his work[.]"

*Id.* at 842 (emphasis omitted).

The judgment of the lower court is affirmed.